UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA                          :

   -v.-                                                          :    12 Cr. 256 (CS)

DANNY BORGOS,                                             :

                           Defendant.                  :

-------------------------------------------------------------x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS**

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Rebecca Mermelstein
Assistant United States Attorneys
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

   -v.-                                          :        12 Cr. 256 (CS)

DANNY BORGOS,                               :

                    Defendant.              :

---------------------------------------------------------------x


**MEMORANDUM OF LAW OF THE UNITED STATES
OF AMERICA IN OPPOSITION TO THE DEFENDANT'S
PRETRIAL MOTIONS**

The Government respectfully submits this memorandum of law in opposition to the

pretrial motions of defendant Danny Borgos, (i) requesting a ruling that the statutorily mandated

five year mandatory minimum sentence for receipt and distribution of child pornography is

unconstitutional; and (ii) precluding the admission of certain statements made by the defendant

during internet chats with an undercover agent (the "UC Chats") on the ground that they are not

relevant to the crimes with which the defendant is charged, and that if relevant, they are more

prejudicial than probative.  The defendant's motions are premature.  The first is an argument

about sentencing – an issue more properly addressed after a full record has been developed and

the defendant has been convicted, and is actually facing sentencing.  The second is essentially an

in limine motion, an issue more properly addressed closer to trial.  In any event, both motions are

without merit. The five year mandatory minimum is constitutional and has been upheld – on both

Due Process and Equal Protection and Eighth Amendment grounds – by virtually every court to

consider the issue.  The UC Chats, in which the defendant discussed his sexual attraction to

children and his attempts to hide his child pornography collection, directed an undercover agent to certain videos containing child pornography, and disclosed certain aspects of his identity, are wholly relevant evidence that it was the defendant who possessed, received and distributed child pornography and that the possession, receipt and distribution were knowing.

## **RELEVANT FACTS**

In or about January 2011, an undercover agent ("UC-1") conducted an undercover session using a peer to peer program (the "P2P Program") to chat with an individual using the screen name "Lolitalova88."  Gov. Ex. A. During the chats, Lolitalova88, discussed his sexual interest in young children and his attempts to hide his collection of child pornography.  Id. Lolitalova88 directed UC-1 to certain specified videos containing child pornography.  Id. Finally, Lolitalova88 disclosed certain biographical information about himself, including that he was living in Rockland County, was almost 23 years old, was Puerto Rican but had been mistaken for Mexican, and that he was shortly going to visit North Carolina.  Id.  The IP address used by Lolitalova88 was traced to an address in Garnerville, New York (the "Garnerville Residence").

 On or about February 23, 2011, another undercover agent ("UC-2") conducted an undercover session using the P2P Program, by using the account of an individual previously charged with child pornography.  Compl. ¶ 3(a).  UC-2 browsed files of other users who were designated as "friends" of the original user.  Id.  UC-2 browsed the shared files of user Lolitalova88, and determined that Lolitalova88 was making available files that contained child pornography.  Id.  The IP address used by Lolitalova88 was traced to the Garnerville Residence. Compl. ¶ 5.  On or about April 1, 2011, law enforcement agents executed a search warrant at the Garnerville Residence and recovered, among other things, a personal laptop computer (the

"Computer").  Compl. ¶¶ 6, 8.  The defendant was present at the Garnerville Residence during

the search and spoke to law enforcement.  Compl. ¶ 9.  More specifically, the defendant told law

enforcement that (i) he had lived at the Garnerville Residence since June 2010; (ii) that the

Computer belonged to him; (iii) that he had used the screen name Lolitalova88, among others;

and (iv) that he had obtained images of child pornography by downloading them from the P2P

program and by receiving them via email.  Id.  The defendant also admitted that he had used the

P2P program to chat with other pedophiles and with children.  The Computer was submitted to a

Westchester County Police Department forensic examiner who determined that it contained

approximately 179,000 images and video files of child pornography.  Compl. ¶ 11.[1]

On or about July 19, 2011, the defendant was charged in a complaint in the Southern

District of New York with receiving and distributing child pornography on or about February 23,

2011, in violation of Title 18, United States Code, Section 2252A(a)(2)(B) and (b)(1) and with

possessing child pornography between on or about December 2010 through in or about April 1,

2011, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2).  On or

about April 3, 2012, the defendant waived Indictment and agreed to proceed by Information,

which contained the same charges as the Complaint. (See Information 12 Cr. 256 (CS)).

**ARGUMENT**

I.      **The Five Year Mandatory Minimum Sentence for Receipt or Distribution of
        Child Pornography is Constitutional**

The defendant argues that the five year mandatory minimum sentence for receipt or

distribution of child pornography is unconstitutional.  Although the defendant does not specify

the constitutional basis of his challenge, his arguments about the five year minimum – that it is

substantively unreasonable, infringes on the discretion of the district courts,  prevents

---

[1] The Complaint alleged that more than 2,000 images and videos of child pornography were found on the Computer.
Further forensic review has revealed that the actual number was exponentially higher than that.

individualized sentencing, fails to distinguish between run of the mill and dangerous offenders, creates sentencing disparities between federal and state defendants, and lacks an empirical basis – would suggest that the defendant's argument is either that the mandatory minimum violates the Fifth Amendment's Due Process and Equal Protection guarantees or that it violates the Eighth Amendment's prohibition on cruel and unusual punishment. Under either theory, however, the five year mandatory minimum sentence for the receipt or possession of child pornography clearly withstands constitutional scrutiny.[2]

### A. The Five Year Mandatory Minimum Sentence Does Not Violate Due Process or Equal Protection

In order to pass constitutional muster, Congressional sentencing schemes, including mandatory minimum sentences, must satisfy constitutional standards of rationality grounded in the Due Process Clause of the Fifth Amendment. See, e.g., United States v. Polizzi, 549 F.Supp. 2d 308, 372 (E.D.N.Y. 2008) (analyzing constitutional validity of child pornography sentences under rationality standard). "[A] person who has been . . . convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as . . . the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." Chapman v. United States, 500 U.S. 453, 465 (1991) (emphasis added) (citations and original emphasis omitted) (analyzing sentences prescribed for possession of LSD).

"To sustain a federal sentencing statute against a due process or equal protection challenge, courts need only find that 'Congress had a rational basis for its choice of penalties.' " United States v. Proyect, 989 F.2d 84, 88–89 (2d Cir. 1993) (quoting Chapman, 500 U.S. at 465);

---

[2]  The defendant's arguments also reference and challenge the Sentencing Guidelines applicable to the charged crimes. This challenge too is premature as the defendant's Guidelines have not yet even been calculated and no Pretrial Services Report has been prepared.

United States v. Huerta, 878 F.2d 89, 94 (2d Cir. 1989) ("[T]here is no right to individualized sentencing, and Congress may constitutionally prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion so long as such constraints have a rational basis." (citations omitted)).  Under rationality review, a statute will be deemed constitutional unless there is "no reasonable basis" on which the law can be upheld or Congress has acted in a "patently arbitrary or irrational way."  See e.g., U.S. Railroad Retirement Board v. Fritz, 449 U.S. 166, 176-177 (1980).  Rational basis review is "deferential" and "does not pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are 'plausible' reasons for Congress's choices." Weinstein v. Albright, 261 F.3d 127, 140 (2d Cir. 2001) (internal quotation marks omitted). This standard confers on the challenged classification "a strong presumption of validity," and places the burden on the person attacking its rationality "to negate every conceivable basis which might support it." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313-315 (1993) (internal citation and quotation marks omitted).

Mandatory minimum sentences routinely pass rational basis review.  The Supreme Court has long recognized that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion."  Chapman, 500 U.S. at 467; see also Kimbrough v. United States, 552 U.S. 85, 106-107 (2007) (while "Sentencing Courts" may deviate from the advisory Sentencing Guidelines range, they "remain bound by the mandatory minimum sentences prescribed [by statute]."); United States v. Shaw, 354 F. Appx. 439, 447 (2d Cir. 2001) (summary order) ("the Supreme Court has squarely rejected the argument that mandatory minimum sentences violate due process and held that Congress may confine the courts' discretion in sentencing with mandatory minimum sentences in statutes") (citing Chapman, 500 U.S. at 467).  Thus, the defendant's arguments that a five year mandatory minimum sentence

impermissibly prevents individualized sentencing, treats run of the mill and dangerous offenders the same, or removes discretion from the district court, are simply without legal support. The law is clear that Congress may dictate mandatory minimum sentences despite any such effects.[3]

Moreover, Congress had compelling reasons for mandating the five year minimum. The five year mandatory minimum sentence for the receipt and distribution of child pornography was implemented by Congress in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act"). In enacting the PROTECT ACT, Congress found as follows:

> The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain.

PROTECT Act, Pub.L. No. 108–21, § 501(2), 117 Stat. 650, 676 (2003) (emphasis added) (citations omitted) (quoting New York v. Ferber, 458 U.S. 747, 757 (1982)). Congress also specifically found that,

> The Government . . . has a compelling interesting in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.

---

[3] Nor does any disparity between State and Federal defendants that may be created by the mandatory minimum give the defendant any basis for relief. United States v. Haynes, 985 F.2d 65, 69–70 (2d Cir. 1993); See also United States v. Clark, 434 F.3d 684, 687-88 (4th Cir. 2006); United States v. Wurzinger, 467 F.3d 649, 653-54 (7th Cir.2006); United States v. Branson, 463 F.3d 1110, 1112-13 (10th Cir. 2006).

Id. Subsection 3 (citations omitted). In other words, "The PROTECT Act was designed to strengthen the laws and procedures for detecting, investigating, prosecuting and incarcerating child kidnappers and sexual offenders, including those who possess child pornography." United States v. Grigg, 442 F.3d 560, 562–63 (7th Cir. 2006).

These Congressional findings build on and amplify previous Congressional findings regarding the need for harsh penalties for child pornography crimes, made in connection with the passage of the Child Pornography Act of 1996. See Child Pornography Act of 1996, Pub.L. No. 104–208, § 121(4), 110 Stat. 3009 (1996) ("[C]hild pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children"); Id. § 121(10) ("[T]he existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children"); Id. § 121(12) ( "[P]rohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children"); Id. § 121(13) ("[T]he elimination of child pornography and the protection of children from sexual exploitation provide a compelling governmental interest for prohibiting the production, distribution, possession, sale, or viewing of visual depictions of children engaging in sexually explicit conduct.").

These findings, which demonstrate that criminalizing the viewing of child pornography helps to eliminate the market for the child pornography and the sexually exploitive use of children, clearly provide, at a minimum, a rational basis for Congress to impose a five year mandatory minimum sentence for the receipt and distribution of child pornography, a crime

which clearly facilitates the distribution and viewing of child pornography. "It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' " Osborne v. Ohio, 495 U.S. 103, 109–10 (1990) (quoting Ferber, 458 U.S. at 756); Ferber, 458 U.S. at 757 ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). Both in its initial production and ongoing publication, child pornography harms and demeans those abused. See Osborne, 495 U.S. at 111, 110 S.Ct. 1691 (noting that the materials' continued existence "haunts the children in years to come."). Pedophiles may use images of child pornography "to seduce other children into sexual activity." Ferber, 458 U.S. at 760; see also S.Rep. No. 104–358, at 13 (1996) ("Child molesters and pedophiles use child pornography to convince potential victims that the depicted sexual activity is a normal practice; that other children regularly participate in sexual activities with adults or peers."). To discourage the creation and distribution of child pornography, prohibiting "this vice at all levels in the distribution chain," Osborne, 495 U.S. at 110, is "[t]he most expeditious if not the only practical method of law enforcement ... to dry up the market for this material." Ferber, 458 U.S. at 760. Criminalizing possession, moreover, encourages the destruction of existing images. Osborne, 495 U.S. at 111, 110 S.Ct. 1691. Enforcement of laws criminalizing the production, distribution, and possession of child pornography is rationally related to these goals; appellate courts have repeatedly upheld such criminal statutes based on these reasons. See, e.g., Osborne, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98; Ferber, 458 U.S. 747; Connection Distributing Co. v. Keisler, 505 F.3d 545 (6th Cir. 2007). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine purpose of general deterrence, and in turn, tends to increase (in some palpable if unmreasurable way) the child pornography market." United States

v. Irey, 612 F.3d 1160 (11th Cir. 2010)(quoting United States v. Pugh, 515 F.3d 1179, 1194 (11th Cir. 2008).

Indeed, the defendant has not cited a single case in which any court, in this District or elsewhere, has found a statutory mandatory minimum term of imprisonment facially unconstitutional, let alone made such a finding in the child pornography context.  To the contrary, courts have uniformly upheld mandatory minimum sentences in the child pornography context.  United States v. C.R., 792 F.Supp. 2d 343, 348 (E.D.N.Y. 2011) ("Irrationality for lack of due process is not a basis for declaring the five-year minimum unconstitutional on its face."); see also United States v. McIntosh, 414 Fed.Appx. 840, 842 (6th Cir. 2011) (upholding ten-year mandatory minimum sentence for a second child pornography conviction under Section 2252A(b)(2) because "[p]rotecting children from those who sexually exploit them is a legitimate objective of government, and punishing those who create a market for this exploitation—either on the supply or the demand side—is a rational means of accomplishing that goal."); United States v. Vanausdal, 269 Fed.Appx. 652, 653 (9th Cir. 2008) (upholding five-year mandatory minimum sentence for a violation of Section 2252(a)(1) "because Congress had a rational basis for creating mandatory minimum sentences to combat child pornography . . ."); United States v. MacEwan, 445 F.3d 237, 253 (3d Cir. 2006) ("[W]e determine that the 15–year minimum sentence mandated by § 2252A(b)(1) [for receiving child pornography with a prior child pornography conviction] does not offend the Due Process Clause of the Fifth Amendment.").

Some defendants have argued that it is not the five year mandatory minimum which is itself irrational, but that the application of the five year mandatory minimum to receipt but not possession is unconstitutionally arbitrary because receipt and possession of child pornography are essentially the same act.  This argument too, however, has been uniformly rejected. See

United States v. Sturm, 673 F.3d 1274, 1280 (10th Cir. 2012) ("Because the harms flowing from possession of child pornography differ from those associated with distribution and receipt, differentiating levels of punishment should not be unexpected."); United States v. Olander, 572 F.3d 764, 769–70 (9th Cir. 2009) ("Congress could have concluded that knowing receipt of child pornography should be punished more severely than mere possession because not all cases of possession require receipt . . . [and] to deter those who receive child pornography from others and who thereby create demand and drive the market for child pornography."); United States v. Watzman, 486 F.3d 1004, 1009 (7th Cir. 2007); United States v. Myers, 355 F.3d 1040 (7th Cir.2004) ("It is certainly not irrational to punish more severely the person who knowingly receives such material, because it is that person who is creating and/or perpetuating the market for such material."). As one District Court explained,

> There is a rational basis for the distinction between receiving child pornography and possessing it. Possession is passive and receiving is more active. It is rational for Congress to seek to eliminate the market for child pornography, that is, to stop trafficking in it. Someone who merely possesses child pornography is not as active in the market as someone who receives child pornography, so there is a rational basis for Congress's decision to impose different sentences for those offenses. In addition, Congress is permitted to impose different sentences without violating the Fifth Amendment's Equal Protection Component of the Due Process Clause.

United States v. McElheney, 524 F.Supp.2d 983, 1000-01 (E.D.Tenn. 2007).

Thus, to the extent the defendant's argument is construed as a challenge to the disparate sentencing for possessing versus receiving child pornography, that argument also fails. In treating the more active crime of receipt more harshly than the passive crime of possession, Congress acted in a wholly rational manner. Accordingly, the defendant's challenge to the five year mandatory minimum sentence as a Due Process or Equal Protection violation fails.

**B. The Five Year Mandatory Minimum Does Not Constitute Cruel and Unusual Punishment Under the Eighth Amendment.**

The Eighth Amendment of the United States Constitution bars the infliction of "cruel and unusual punishments." U.S. Const, amend. VIII.  In <u>Roper</u> v. <u>Simmons</u>, the Supreme Court stated that this provision "guarantees individuals the right not to be subjected to excessive sanctions." 543 U.S. 551, 560 (2005).  "The right flows from the basic precept of justice that punishment for crime should be graduated and proportioned to the offense." <u>Id.</u>  (internal quotations omitted). However, "federal courts should be reluctan[t] to review legislatively mandated terms of imprisonment, and [] successful challenges to the proportionality of particular sentences should be exceedingly rare." <u>Hutto</u> v. <u>Davis</u>, 454 U.S. 370, 374 (1982) (per curiam) (internal quotation marks omitted).

In <u>Ewing</u> v. <u>California</u>, the Supreme Court held that noncapital sentences are subject only to a "narrow proportionality principle" which prohibits sentences that are "grossly disproportionate" to the crime.  538 U.S. 11, 20, 23 (2003) (quoting <u>Harmelin</u> v. <u>Michigan</u>, 501 U.S. 957, 996-97 (1991)) (Kennedy, J., concurring in part and concurring in judgment). There, the Court rejected an Eighth Amendment challenge to a prison term of twenty-five years to life under California's "three strikes law" for a recidivist who was convicted of stealing golf clubs worth $1,200.  Justice O'Connor, in a plurality opinion, recognized that the law had been criticized for its lack of effectiveness and lack of wisdom, but nonetheless noted that the State of California had a "reasonable basis" for believing the law would substantially advance the deterrence of crime.  <u>Id.</u>  at 24-28.  Justice O'Connor then held that even though the sentence was long, "it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious crimes" must be incapacitated.  <u>Id.</u> at 30.

Both <u>Harmelin</u> and <u>Ewing</u> reaffirm that only in "exceedingly rare" cases will a sentence for a term of years violate the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Ewing</u>, 538 U.S. at 22. In order to make this determination, a court must first examine whether the legislature "has a reasonable basis for believing that [a sentence advances] 'the goals of [its] criminal justice system in any substantial way.' " <u>Id.</u> at 28 (quoting <u>Solem</u> v. <u>Helm</u>, 463 U.S. 277, 297 n. 22 (1983)). The court then considers if the sentence of the particular defendant is grossly disproportionate to the crime he committed. <u>Id.</u> The court need not look beyond this threshold question if the statute arguably furthers the State's penological goals and reflects "a rational legislative judgment, entitled to deference." <u>Id.</u> at 30.

### (i) *Congress had a Rational Basis for Requiring the Imposition of a Sixty-Month Minimum Sentence*

As described in further detail above, in the discussion of the Due Process and Equal Protection issue, it is clear that Congress had a reasonable basis for believing that a five year mandatory minimum sentence would advance the goals of the criminal justice system. Congress's explicit findings in enacting the five year mandatory minimum was to prevent the exploitation of children by, among other things, "<u>stamping out the vice of child pornography at all levels in the distribution chain</u>." PROTECT Act, Pub.L. No. 108–21, § 501(2), 117 Stat. 650, 676 (2003) (emphasis added) (citations omitted) (quoting <u>Ferber</u>, 458 U.S. at 757). In sum, Congress has already made the relevant policy determination about the seriousness of this defendant's offense, and courts should not usurp that role.

### (ii) *The Defendant's Mandatory Minimum Sentence is Not Grossly Disproportionate to the Crime he Committed*

Only once in the past 25 years, in <u>Solem</u> v. <u>Helm</u>, has the Supreme Court sustained an Eighth Amendment challenge to a prison sentence for a term of years, based on proportionality

review.  463 U.S. 277.  The facts and circumstances present here are not even remotely comparable to those presented in Solem.

In Solem, a judge sentenced a non-violent repeat offender to life imprisonment without parole for the crime of writing a "no account" check for one hundred dollars.  463 U.S. at 279-82.  The Court noted that this crime was very minor and the life sentence was "the most severe punishment that the State could have imposed" short of the death penalty.  Id. at 297.  The Court further noted that the crime was "one of the most passive felonies a person could commit."  Id. at 296.  In this case, by contrast, the defendant actively amassed a massive quantity of child pornography, thus feeding the demand which generates the creation of such material in the first instance.  The defendant also actively made his collection available to others by sharing it on the P2P network and, on at least one occasion, directed a person the defendant believed to be a fellow pedophile to videos that the defendant was making available.

Additionally, Solem concerned a judge's discretionary decision to impose the maximum authorized sentence.  By contrast, the defendant here would be sentenced to a mandatory minimum that was established by the United States Congress.  Therefore, Solem did not implicate the "traditional deference" that courts must afford to legislative policy choices when reviewing statutorily mandated sentences, a deference that is appropriate here.  See Ewing, 538 U.S. at 25 (O'Connor, J., announcing judgment of the Court); Harmelin, 501 U.S. at 10006-07 (Kennedy, J. concurring in part and concurring in the judgment); Solem, 463 U.S. at 299, n. 26 (noting that the Court's decision did "not question the legislature's judgment.").

The Court has emphasized that the "rare circumstances" in which it has struck down a term-of-years sentence are those in which a defendant was ineligible for release from prison, see Ewing, 538 U.S. at 22 (explaining that in Solem, "[w]e specifically noted the contrast between

that sentence and the sentence in <u>Rummel</u> [v. <u>Estelle</u>, 445 U.S. 263 (1980)], pursuant to which the defendant was eligible for parole"). Even in those cases, the Court has not found all life terms without the possibility for parole to be unconstitutional. <u>See</u> <u>Harmelin</u>, 501 U.S. 957 (1991) (rejecting Eighth Amendment claim from first time offender convicted of possessing 672 grams of cocaine and sentenced to life in prison without the possibility of parole). In the present case, if this Court sentences the defendant to the mandatory minimum sentence, the defendant will serve, at most, five years in prison, less any goodtime credit awarded by the Bureau of Prisons. Such a term does not come close to the severity of the prison terms upheld in <u>Rummel</u>, <u>Harmelin</u> and <u>Ewing</u>.

Perhaps the most striking example is <u>Hutto</u> v. <u>Davis</u>, 454 U.S. at 374. In <u>Hutto</u>, the defendant was convicted of possessing 9 ounces of marijuana and assorted drug paraphernalia. He was sentenced to two twenty-year terms of imprisonment, which the Supreme Court found constitutional. Based on the sentence in <u>Hutto</u>, the only argument left to the defendant is that his offense is considerably less significant than the marijuana possession offense in <u>Hutto</u>. Such an argument would require open disagreement with Congress's assessment of the seriousness of receiving and distributing thousands of images of children being sexually exploited.

Even if the district court were to undertake an analysis of the relative seriousness of the defendant's crime, it is hard to imagine how the defendant's crime of distributing child pornography is less serious than Hutto's possession of 9 ounces of marijuana. <u>See</u> <u>Gonzales</u> v. <u>Raich</u>, 545 U.S. 1, 5 n.l (2005) (collecting statutes from nine states that have decriminalized marijuana for medical purposes). Additionally, every Circuit that has considered this question has refused to expand the proportionality principle and has determined that a sentence within the statutory maximum-minimum range for child pornography offenses does not violate the Eighth

Amendment. See, e.g., United States v. Soule, 250 Fed. Appx. 834, 2007 WL 2962373 (10th Cir. 2007)(unpublished) (sentence above the mandatory statutory minimum of 120 months for second conviction for possession of child pornography did not violate the Eighth Amendment); United States v. Weis, 487 F.3d 1148, 1154 (8th Cir. 2007) (a sentence of less than the twenty year maximum under 18 U.S.C. § 2252(a)(2) did not violate the Eighth Amendment); United States v. Meiners, 485 F.3d 1211 (9th Cir. 2007) (per curiam) (15-year mandatory minimum sentence for advertising child pornography under § 2251(d) did not amount to cruel and unusual punishment in violation of the Eighth Amendment); United States v. Green, 259 Fed. Appx. 171, 2007 WL 4403148 (11th Cir. 2007) (per curiam) (unpublished) (97-month sentence for violations of §2252 (a) (2) and (a) (4) does not violate the Eighth Amendment); United States v. Bledsoe, 177 Fed. Appx. 311, 2006 WL 1083353 (4th Cir. 2006) (per curiam) (unpublished) (mandatory minimum of 15 years pursuant to § 2251(d) for advertising willingness to trade child pornography does not violate the Eighth Amendment; proportionality review not available for any sentence less than life imprisonment without the possibility of parole); MacEwan, 445 F.3d 237 (fifteen year mandatory minimum sentence for child pornography offender did not violate the Eighth Amendment); United States v. Gross, 437 F.3d 691 (7th Cir. 2006) (fifteen-year mandatory minimum sentence for distribution of child pornography not grossly disproportional). Accord United States v. Wilder, 2006 WL 572699 (D. Mass. 2006) (unpublished)(mandatory minimums for recidivist defendants established by §2252(b)(1) and (2) "are not grossly disproportionate to the serious offenses that they are meant to punish").

Although not cited by the defendant, there is a single district court case holding the five year mandatory minimum sentence for the distribution of child pornography to be a violation of the Eighth Amendment. In C.R., the Honorable Jack B. Weinstein in the Eastern District of New

York, held that the imposition of a five year mandatory minimum sentence violated the defendant's Eighth Amendment rights.  792 F.Supp. 2d at 343.  That case, however, was both wrongly decided and is inapplicable here.[4]  In C.R., rather than considering the correct proportionality standard, Judge Weinstein utilized the "categorical approach," which looks to "objective indicia of society's standards . . . to determine whether there is a national consensus against the sentencing practice at issue," as well as the court's "own independent judgment whether the punishment in question violates the Constitution," as guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth amendment's text, history, meaning, and purposes."  Graham v. Florida, 130 S. Ct. 2011, 2022 (2010).  But the categorical approach is limited to cases involving the death penalty and, in some cases, to cases involving juveniles, and accordingly, is inapplicable here.  In any event, even under the categorical approach, the five year mandatory minimum in the child pornography context does not violate the Eighth Amendment, because, among other reasons, there is no overwhelming national consensus against the sentencing practice at issue here.  Indeed, there is an overwhelming national consensus that a five year sentence does not violate the Eighth Amendment.  See, e.g., Weis, 487 F.3d at 1154; Meiners, 485 F.3d 1211 (9th Cir. 2007); MacEwan, 445 F.3d 237 (3d Cir. 2006); Green, 259 Fed. Appx. At 171; Soule, 2007 WL 2962373 (10th Cir. 2007); Gross, 437 F.3d 691 (7th Cir. 2006); Bledsoe, 2006 WL 1083353 (4th Cir. 2006); United States v. Yousef, 327 F.3d 56 (2d Cir. 2003); Wilder, 2006 WL 572699 (D. Mass. 2006). In finding otherwise, Judge Weinstein improperly compared state sentencing ranges to federal Sentencing Guideline ranges, which are often considerably higher than the mandatory minimum and are not at issue here.  Indeed, the data cited by Judge Weinstein – that

---

[4] The Government's appeal of Judge Weinstein's decision is currently pending before the Second Circuit.

the sentencing for defendants sentenced to state prison on child pornography charges was 33 to 98 months, see C.R., 792 F.Supp 2d at 493 – actually indicates that the federal mandatory minimum sentence easily conforms to the national consensus.  Because the C.R. case was wrongly decided and is at odds with the overwhelming consensus of Circuit and District Courts throughout the country, it should be disregarded.

Thus, as discussed above, the standard for finding that a term of years sentence is cruel and unusual punishment is exceedingly difficult to meet.  As established by the strong national consensus among the Circuits that have considered the issue, mandatory minimum sentences for child pornography offenses do not violate the Eighth Amendment.  Accordingly, that exceedingly difficult standard is not met here.

### III. The Internet Chats are Relevant and Admissible as Direct Evidence of the Defendant's Guilt and are Also admissible as Prior Bad Act Evidence under Federal Rule of Evidence 404(b).

The UC Chats (or the "Proffered Evidence") is admissible (1) as direct evidence of the crimes charged; and (2) alternatively, admissible under Federal Rule of Evidence 404(b).

#### A.  Direct Evidence

The Proffered Evidence is admissible as direct evidence of the defendant's intentional possession of child pornography, as charged in the Information.  The defendant is charged with possessing child pornography from at least in or about December 2010 through in or about April 1, 2011.  In the UC Chats, which occurred over several days in January 2011, the defendant makes statements which tend to suggest that the defendant did, in fact, possess child pornography.  For example, during the chats, UC-1 and the defendant engage in the following conversation:

UC-1:  Have any good vids where the girl cries while getting fucked? . .  Which one is that?

17

| | |
|---|---|
| Lolitalova88: | 6yo Tiny Tessa Ass-Fucked Screaming NEW 2008 I think the girl in this vid is screaming also (2007 Tara 8Yr – Gets Buttfucked By 14 Inch Long Vibrator. |
| UC-1: | oh yea I love that one . . . that's where the dad is just ramming her ass with a huge vibrator righ[t] |
| Lolitalova88: | yea[.] have you seen (8 yo Boy fucks 6 yo Girl Over Toilet) the girl says she's gonna tell he[r] mom as the 8 yr is raping her. |
| UC-1: | hehe yeah[.] crappy quality but hot[.] |
| Lolitalova88: | I wish I could see the whole vid |
| UC-1: | I like the one you have in your downloads that is 0b(incomplete) about Guatemala sopp2 or something . . . it's a girl in the back of a car getting fucked then you watch it dripping out of her pussy before she wipes it up and puts on her pantie. |
| Lolitalova88: | lol . . . |

The content of these chats make clear that the defendant has viewed child pornography. The fact that when UC-1 asks if the defendant has any good videos of child pornography the defendant responds with a particular video suggests that the defendant has not merely viewed the video, but actually possesses it. Similarly, the fact that in response to UC-1's comment that UC-1 likes the video in the defendant's downloads, the defendant does not say he does not have any downloads, but simply response "lol," suggests that the defendant does indeed possess child pornography. Accordingly, these chats constitute direct evidence that the defendant possessed child pornography during the charged period.

### B. The UC Chats Are Admissible Pursuant to Federal Rule of Evidence 404(b)

If the Proffered Evidence is not admitted as direct evidence of the crimes with which the defendant is charged, it is nonetheless admissible under Rule 404(b), as evidence of the

defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). For evidence to be admitted under Rule 404(b):

> the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice. Finally, upon request, the district court must give an appropriate limiting instruction to the jury.

United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); see, e.g., United States v. Brand, 467 F.3d 179, 196-97 (2d Cir. 2006).

The Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'" United States v. Paulino, 445 F.3d 211, 221 (2d Cir. 2006) (quoting Pitre, 960 F.2d at 1118-19). Applying this approach, the Second Circuit has routinely approved of the admission of "other crimes" evidence with respect to the issues of knowledge, intent and/or motive. See, e.g., United States v. Thomas, 54 F.3d 73, 81-82 (2d Cir. 1993); United States v. Meyerson, 18 F.3d 153, 166-67 (2d Cir. 1994). Where the defendant claims his conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate. See, e.g., United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

The defendant's knowledge and intent are at issue unless the defendant has unequivocally conceded that element of the offenses with which he is charged. See, e.g., United States v. Colon, 880 F.2d 650, 656-57 (2d Cir. 1989); see also United States v. Ramirez, 894 F.2d 565,

568 (2d Cir. 1990) (when the defendant "disavows awareness that a crime was being perpetrated" and the Government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue"). A defendant places his intent at issue when he argues that he was "merely present" where the alleged offense occurred, *i.e.*, here, merely used the Computer and/or the File-Sharing Program, and was not involved in any illegal activity. See United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994).[5]

Applying these principles, the Proffered Evidence is plainly admissible. First, the Proffered Evidence demonstrates the identity of "Lolitalova88." For example, in the UC Chats Lolitalova88 stated that he is Puerto Rican, but was mistaken for Mexican, that he lives in Rockland County, that he is "almost 23," and that he is going down to Charlotte, North Carolina. The defendant is Hispanic, was living in Rockland County, was born in 1988, and lived in North Carolina before moving to Rockland County. Thus, the content of the chats offers direct and

---

[5] With respect to timing of the Government's introduction of evidence under Rule 404(b), the Second Circuit has held that "as a general rule, the offer of evidence to prove the defendant's intent or knowledge should await the conclusion of the defendant's case. However, where it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief." Pitre, 960 F.2d at 1120; see also Inserra, 34 F.3d at 90 ("[A]dmission of similar act evidence to prove intent or knowledge . . . is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."). Thus, in order to forestall the admission of such evidence in the Government's case-in-chief, a defendant must unequivocally remove knowledge and intent from the case:

> 'When the Government offers prior act evidence to prove an issue,
> counsel must express a decision not to dispute that issue with
> sufficient clarity that the trial court will be justified (a) in
> sustaining objection to any subsequent cross-examination or jury
> argument that seeks to raise the issue and (b) in charging the jury
> that if they find all the other elements established beyond a
> reasonable doubt, they can resolve the issue against the defendant
> because it is not disputed.'

United States v. Nachamie, 101 F. Supp. 2d 134, 138-39 (S.D.N.Y. 2000) (quoting United States v. Figueroa, 618 F.2d 934, 942 (2d Cir. 1980)).

relevant evidence that the individual using the name Lolitalova88 to store and share child pornography over the file sharing program was, in fact, the defendant.

Moreover, the UC Chats demonstrate that far from an "accident" or a "mistake," the possession and distribution of child pornography by the defendant was knowing, intentional, and motivated by a sexual interest in children generally, and in certain kinds of sexual acts in particular. See, e.g., United States v. Sebolt, 460 F.3d 910, 917-18 (7th Cir. 2006) (admission of prior molestation and chats regarding molestation in child pornography prosecution proper; "instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense[.] It also may serve to identify the defendant to the crime." (citation omitted)); United States v. Hall, 202 F.3d 270, at *3 (6th Cir. 2000) (per curiam) (admission of prior sexual abuse conviction and evidence of possession of nude images of children, explicit e-mails attempting to solicit sexual pictures of young boys, and participation in teen-oriented online chat in child pornography prosecution proper; evidence shows that the defendant "intentionally pursued a sexual interest in children, thereby demonstrating his intent to knowingly receive child pornography"); see also Brand, 467 F.3d at 197, 199.

Indeed, the chats themselves further demonstrate the defendant's knowing possession of child pornography because in the chats the defendant explicitly discusses the need to hide his child pornography. For example, the defendant told UC-1 that the defendant was "working on an adobe file called "How to Hide Your Activities From Police" and that "currently I hide mine [child pornography] on a external hard drive or flash drive that I buried in a lock box in my mother's backyard ("I have it on an external hard drive hidden in the walls.")

For these reasons, the Proffered Evidence falls squarely within Rule 404(b).

### C.  The Proffered Evidence Should Not Be Excluded Under Rule 403

There is no basis to exclude the Proffered Evidence under Rule 403.

First, the Proffered Evidence is not more sensational or inflammatory than other evidence that the Government will introduce at trial.  See, e.g., United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (evidence not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").  The UC Chats consist of explicit statements by the defendant regarding his desire and intent to obtain and distribute child pornography and his sexual preferences for young children.   This is a case that necessarily involves upsetting and disturbing statements of the defendant.  And it is one in which the particulars of those statements matter, because the jury is entitled to weigh the probative value of the match between the defendant's specific sexual preferences discussed in the UC Chats and the nature of the child pornography found on the Computer.  The Proffered Evidence does consist of upsetting statements.  In the UC Chats, the defendant discusses his desire to rape prepubescent children and the excitement he derives from the children's pain.  For the reasons discussed above, these statements are highly probative of the defendant's knowledge and intent.  But while upsetting, they are no more so than other evidence the Government will present, and the crimes with which the defendant is charged, which involve the horrific sexual abuse of young—in some cases, very young—children.

Indeed, the Proffered Evidence—and all of the communications and other evidence that the Government expects to present—is markedly less sensational or upsetting than the child pornography itself in this case, which includes videos and images of young children being sexually abused in horrible, sometimes violent ways.  In these circumstances, there is no danger that the admission of the Proffered Evidence will elicit a separate, heightened response from the

jury that would prevent the jury's fair assessment of the evidence. And the Court may minimize the risk of any such response with a limiting instruction that the defendant is not on trial for any offense other than those charged. See United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); see generally Parker v. Randolph, 442 U.S. 62, 75 n.7 (1979) ("The 'rule'– indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions.").

Second, there is no danger of unfair prejudice in the admission of the Proffered Evidence. While the Proffered Evidence is direct evidence of the charges in this case and is highly probative of the identity, intent, and knowledge of the defendant, this is unlike a case where the Government seeks to introduce a defendant's prior conviction. That is, the defendant remains free to argue that Lolitalova88 is not him, and that he in fact did not author messages from that screen-name. Upon review of all of the evidence, the jury can accept or reject that argument.

Third, most importantly, evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." Figueroa, 618 F.2d at 943. "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair." Costantino v. Herzog, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original). There is nothing unfair in the admission of the Proffered Evidence to the extent it helps to prove the defendant's commission of the charged offenses, identity, knowledge, and intent and motivation. Indeed, it is proper for a jury to infer that a defendant is more likely to possess and distribute child pornography if he has previously expressed a sexual interest in children and a willingness to indulge that interest. See, e.g., United States v. Levy, 594 F. Supp. 2d 427, 440 (S.D.N.Y.

2009) (admitting videos showing "young girls . . . being subjected to horrendous acts"; "[T]he evidence was not _unfairly_ prejudicial, as this was conduct that [the defendant] chose to engage in, and this was evidence that showed, convincingly, that [he] had a sexual interest in children and the intent and desire to commit the charged crimes." (emphasis in original)); see also Sebolt, 460 F.3d 910, 917 (7th Cir. 2006) (admission of the defendant's "history of molestation" proper as "strong evidence of his motive to advertise child pornography online"; while "evidence of child molestation is highly prejudicial," it is "not _unfairly_ prejudicial" (emphasis in original)) (cited with approval in United States v. Davis, 624 F.3d 508, 512 (2d Cir. 2010).

Accordingly, none of the Proffered Evidence should be excluded under Rule 403.

## **CONCLUSION**

For the foregoing reasons, the defendant's request for a hearing and motion in support of suppression should be denied.

Dated:  New York, New York
　　　 November 19, 2012

　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　PREET BHARARA
　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　By:　　 s/ Rebecca Mermelstein　　　　　　 _
　　　　　　　　　　　　　　　Rebecca Mermelstein
　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　(212) 637-2360

## CERTIFICATE OF SERVICE

I certify that on this day, November 19, 2012, I caused a copy of the foregoing Memorandum of Law in Opposition to Defendant's Pretrial Motions to be served on David Goldstein, Esq. by ECF.

<br>

/s/ Rebecca Mermelstein
REBECCA MERMELSTEIN
Assistant United States Attorney
Tel.: (212) 637-2360