

# LAW OFFICES OF
# DAVID I. GOLDSTEIN
*ATTORNEYS AT LAW*
747 Chestnut Ridge Road
Suite 200
Chestnut Ridge, New York 10977
(845) 356-4600

(845) 356-4902 Fax
(not for service)

DAVID I. GOLDSTEIN*+
KIM M. RAYNER*

BRYAN M. GOLDSTEIN**♦
MEMBER NY & NJ BAR *
MEMBER IL BAR +
MEMBER DC BAR ♦

210 SUMMIT AVENUE
MONTVALE, N.J. 07645
(201) 391-5009

PLEASE REPLY TO:

☐ CHESTNUT RIDGE, N.Y.
☐ MONTVALE, N.J.

July 8, 2013

**Via E-Filing**

**Hon. Cathy Seibel**
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

        Re:   USA v. Danny Borgos
             Case No.: 12-CR-256 (CS)
             **Sentencing Memorandum**

Honorable Madam:

"I felt bound by those mandatory guidelines and I hated them."

~ J. Ronald R. Lagueux, United States District
Court Judge for the District of Rhode Island

## I. INTRODUCTION

Denise Dallaire was arrested at age 26 on charges of selling a few ounces of crack cocaine in 2003. She was sentenced by J. Ronald R. Lagueux to more than 15 years. In February 2013, ten years into her fifteen year sentence, Judge Lagueux called Ms. Daillaire before him once again, set her free, and stated, "I'm sorry I sent you

away for 15 years." Ethan Bronner, *A Long Prison Term is Less So Thanks to Regrets by the Sentencing Judge*, The N.Y. Times, March 29, 2013 at A11.

Judge Gleeson, United States District Court for the Southern District of New York, offered commentary stating,

> There are a lot of people like Denise doing **bone crushing time** under the **old** sentencing regime, and we need to try to find ways to help them. *Id.* emphasis added.

## II. **BACKGROUND**

Imagine a life of solitude and loneliness, a life with no friends, a life lacking a solid support system. While few may rise above these obstacles and pull themselves up for a chance at a better lifestyle, most fall victim. At no fault of his own, Danny Borgos was, and remains, a victim.

Danny's childhood was wrought with sexual abuse, a frequently incarcerated father of whom he viewed abusing drugs, and constant relocation. He lacked stability, support, and love. Now, at twenty-four years old, Danny's life is on the verge of a permanent downward spiral, from which he may never recover.

Danny has a lengthy psychiatric history, evident when he was only three-years-old. He was non-responsive to his name, his language was low and barely heard, and he displayed a handicapped condition.

In 1991, Danny witnessed his father abusing drugs. His father was only around intermittently throughout his life, as he was frequently incarcerated on various drug related offenses. Danny's father now resides in California, and Danny ceased all communication with him in 2011.

Danny was preyed upon and victimized for a period of approximately eight years, beginning when he was only seven-years-old. These were his formidable years. Danny was sexually abused during that time by over 25 people, one of which he identified as a female police officer. He has trouble recalling the details of the abuse as his memory has become "iffy" due to the psychological damage this trauma has caused. Sadly, his family's financial limitations never allowed him to seek the proper treatment he so desperately needed. As a result of his physical and emotional trauma, and lack of support, Danny turned to the subject matter that lead to this arrest. Only now, through pretrial services, he finally is receiving the treatment he has always needed.

### III. THE FIVE YEAR STATUTORY MANDATORY MINIMUM IS MORE THAN SUFFICIENT PUNISHMENT

As of the date of arrest, Danny has been confined to his home as a condition of his release. He has fully complied with all the terms and conditions therein, which have been in place for **over two years!** Last year the terms of his house arrest were extended allowing him to be outside in the yard. There has never been any question regarding Danny's cooperation with this Court's Orders.

As this Court is aware, the sentence imposed should be sufficient, but not greater than necessary to meet the goals of sentencing. While Danny now faces a mandatory minimum of five years imprisonment, anything above same would be grossly unfair and unjust.

Danny's compliance with the terms of his release thus far should be factored in as part of his sentence.

> While the Board of Prisons will not credit an inmate's sentence for time served on pretrial release under home confinement or in a halfway house if that placement was a

3

condition of bond, as opposed to an alternative custody arrangement, courts are nonetheless free to account for such time as a basis for a variance. *United States v. Gall*, 552 US 38 (2007).

The Supreme Court made clear in *Gall*, supra.,

The amount by which a sentence deviates from the applicable Guidelines range is not the measure of how "reasonable" a sentence is. Reasonableness is determined instead by the district court's individualized application of the statutory sentencing factors.

This office filed a Motion dated October 19, 2012, concerning the unconstitutionality of the five year statutory minimum mandatory sentence of imprisonment under Title 18 of the United States Code. **See Exhibit "A."** In the interest of brevity, only portions of said Motion will be reiterated herein, while the entirety of the Motion has been annexed as Exhibit "A" for your Honor's review. As stated therein, pursuant to *United States v. Ryan*, 406 Fed.Appx. 565 at 566 (2nd Cir. 2001), the standard of review of sentencing is one of reasonableness. The determination of "reasonable" involves an examination of the length of the sentence (substantive reasonableness) and the procedure employed in arriving at the sentence (procedural reasonableness). *Id.* To impose a procedurally reasonable sentence, the district court must: (1) normally determine the applicable Guidelines range, (2) consider the Guidelines along with other factors under §3553(a) and (3) determine whether to impose a Guidelines sentence or a non-Guidelines sentence. *Id.* at 567.

The sentencing factors set forth in 18 USC § 3553(a) in determining procedural and substantive reasonableness (pertinent to the instant case) are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2)

4

the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner... United States v. Richardson, 521 F.3d 149 at 156-57 (2nd Cir. 2008).

Danny is not a sexual predator, is not a danger to society, and does not deserve to be incarcerated, let alone face the five year statutory mandatory minimum. He has already served over two years on house arrest, and has done so in total compliance with his release. His conduct evinces that he is clearly able to abide by this Court's directives and Orders. Five years imprisonment a substantial. In addition to the removal from society, the re-entry may be just as difficult. Danny has suffered socially in the past, so simply imagine the impact incarceration will have on him. He is young, naïve, and developmentally delayed. He will once again, for the period of incarceration, be targeted and victimized.

Anything beyond the mandatory minimum sentence will be greater than necessary to accomplish the goals of sentencing. In fact, the United States Attorney's Office has already agreed they would not oppose the imposition of the five year minimum sentence. Danny, pursuant to this Court's determinations and Orders, has sought and enrolled in treatment as required of him, and has cooperated fully.

Therefore, we respectfully request Danny Borgos be sentenced to no greater than the five year statutory minimum mandatory sentence of imprisonment under Title 18 of the United States Code. As an alternative, we request the Court disregard the

mandatory minimum term of imprisonment, and sentence Danny to probation for the reasons set forth below.

## IV. **PURSUANT TO THE DRACONIAN RULES, AND THE GROWING TRENDS OF FEDERAL SENTENCING COURTS, DANNY BORGOS SHOULD NOT BE INCARCERATED, AND ALTERNATIVELY, BE SENTENCED TO PROBATION**

### A. *A COST-EFFECTIVE APPROACH TO SENTENCING*

Danny is a young, troubled individual, a product of his unfortunate environment and a difficult and abusive upbringing. Now, he is being victimized further. Victimized by a mandatory minimum sentence. Danny needs treatment and rehabilitation, not incarceration. In fact, the current system often turns out prisoners who are more harmful to society than when they went in, so prison and re-entry reform are issues of public safety as well. Richard A. Viguerie, *A Conservative Case for Prison Reform*, The N.Y. Times, Op-Ed, June 2013 at A23. As a result, there has been a growing trend toward alternatives to incarceration. *Id.*

The United States has 5% of the world's population, yet 25% of its prisoners, yielding approximately 1 in 33 American adults in some form of correctional control. The prison system costs states more than $50 billion a year, the second fastest growing state budget, behind only Medicaid. The organization, Right on Crime, focuses on community-based programs rather than excessive mandatory minimum sentencing policies and prison expansion. *Id.*

There has been a dramatic shift on crime and punishment policy across the country. Texas pioneered this change in 2007 when the State declined to build eight more prisons, instead shifting nonviolent offenders from state prison into alternatives to

As a result, its **crime rate declined**, and parole failures dropped 39%. *Id.* emphasis added. Since then, more than a dozen states have made changes to their sentencing and corrections law, following in Texas' leadership. *A Conservative Case for Prison Reform,* supra.

Recent economic realities have resulted in a growing trend to argue that the cost of incarceration should be factored into whether a sentence is greater than necessary. Alan Ellis, Todd Bussert, and Mark Allenbagh, *Federal Sentencing Tips,* The Champion: National Association of Criminal Defense Lawyers, April 2013. Such argument carries greater force when the court understands what the defendant would be doing if not incarcerated which will decrease the likelihood that the defendant will recidivate. *Id.* Danny has shown no signs of recidivism, has never acted violently nor even had contact with a child, and is not a threat to society. He certainly has the will and ability to comply with all probationary terms should they be implemented.

Also, Guideline section 5H1.3 was amended to provide that "mental and emotional conditions may be relevant in determining whether a departure is warranted, especially in certain cases...to accomplish a specific treatment purpose. Thus, the history and characteristics of the defendant should be factored into determining a sentence, since the Board of Prisons will not likely treat a specific area requiring accommodation and, therefore, a variance may be warranted. The cost of treating a client's conditions further supports a cost-related mitigation argument, particularly in light of the Board of Prison's chronic budgetary problems and persistent overcrowding. *Id.*

## B. *AN ALTERNATIVE TO INCARCERATION*

Danny is not a danger to society, and fortunately, there are alternatives to incarceration, all with the same general goal of rehabilitation and re-entry into society as an upstanding and law abiding citizen. As stated in previous papers and oral arguments before this Court, Danny has never had any contact with a child. He has never actually engaged in any conduct with a child, and is unlikely to do so.

Pursuant to Dr. Must's report (See Exhibit "A," Sub-Exhibit "C" page 11 therein), Danny would benefit from increased mental health treatment, and vocational services should continue to be pursued to help Danny assemble structure and purpose in his early adulthood. Furthermore, Dr. Levine, LCSW-R states that from the symptoms Danny displays, he will **likely be a target if incarcerated** (See Exhibit "A," Sub-Exhibit "D" therein). Dr. Levine further recommends that Danny will **benefit more from intensive treatment than punishment.**

This Court has the authority and ability to carefully monitor Danny's conduct should he avoid incarceration. US District Judge Vincent Briccetti realized this as illustrated in the case of Patrick Colon. Patrick Colon (23 years old), the son of salsa legend Willie Colon, was spared prison time for possession of child pornography. Lee Higgins, *Salsa Legend Willie Colon's Son Spared Prison in Child-Porn Case*, The Journal News, May 22, 2013. Federal prosecutors sought a prison sentence, pursuant to the Guidelines, between five years, three months, and six and a half years. However, Judge Briccetti sentenced him to five years supervised release. He was to be subjected to computer monitoring, supervision for at least the next 10 years, and registered as a sex offender and supervised on the registry for at least 10 years. *Id.*

Another example of an alternative to incarceration occurred when a defendant (twenty-two years old at time of sentencing), as a teen (three years earlier), possessed at least 356 pornographic photos and at least 231 pornographic videos of children. Eastern District Judge Jack Weinstein commissioned experts to fashion an appropriate penalty. John Caher, *Judge Taps Experts in Fashioning Sentence for Child Porn Possession*, N.Y. L.J. May 2, 2013 at 1. Therein, Judge Weinstein rejected the federal sentencing guidelines, concluding, "society and the offender would be far better served by a sentence of probation and extensive treatment." *Id.*

According to the Guidelines, the recommendation therein was 78 to 97 months. However, the defendant was sentenced to five years' probation with stringent controls to ensure continued treatment. *Id.* Judge Weinstein opined,

> Justice for the victims of this crime – and for society's future interest in seeing to it that defendant engages in no further criminal activity – is best served through treatment and supervision outside of prison. *Id.*

The defendant in the above-mentioned case began treatment immediately after his arrest, and he never engaged in sexual activity with a child (similar to the present facts before this Court). Judge Weinstein believed bringing in experts would be the most effective and fair way to fashion an appropriate sentence. He further stated,

> There is no reason panel discussions by experts should not be utilized in the sentencing context...Given the substantial progress defendant has shown with his current outpatient treatment, the **lack of risk he presents to the public,** and the importance of immersing himself in an environment of his peers, a sentence of non-incarceratory probation is more appropriate than any other...custody would not provide defendant with sufficient treatment. *Id.* emphasis added.

Judge Weinstein acknowledged the impact of pornographic crimes on the young victims involved. He stressed the defendant's crime is serious and warrants punishment – but stated the defendant's guilty plea will result in a federal record for a sex offense, and he will have to abide by many restrictions on where he can live or work. The sentence devised therein with the help of the expert panel illustrates the sensible cooperation of prosecutor, defense, experts, and the court **to save rather than destroy** an adolescent found to have used his computer to view child pornography. *Id.* emphasis added.

Judge Weinstein is among several judges who have become critical of what he characterized as the "unreasonable harshness" of the Guideline sentences for possession of child pornography. This was especially so for the case herein cited and the like, where the defendant is a first-time offender, is not a pedophile, has cooperated fully with therapists and "suffers from a treatable pornography obsession." *Id.*

Importantly, Judge Weinstein also observed that the US Court of Appeals for the First, Second, Third, and Ninth Circuits, "have expressly recognized what little deference the child pornography Guidelines are owed."

### C. *THE HARSHNESS OF STRICT ADHERENCE TO THE GUIDELINES IN CHILD PORNOGRAPHY CASES*

As a result of the routine imposition of mandatory minimums as well as massive Guideline sentences, sex offenders now constitute – for the first time – the fourth largest group of offenders in the Board of Prisons, costing the public well over $307 million a year just to house (The average cost of incarceration is $38,284 per year). *See* Bureau

of Prisons, Annual Determination of Average Cost of Incarceration, 76 Fed. Reg. 57081 (Sept. 2011). Mark H. Allenbaugh, Zachary Margulis-Ohnuma, Tess Lopez and Fay Spence, *Here They Go Again: Congress Once More Raises Penalties for Child Pornography Offenses – A Legislative Update*, The Champion: National Association of Criminal Defense Lawyers, November, 2012.

Furthermore, child pornography offenders receive an average sentence far higher than any other major offense category (US Sentencing Commission, *Preliminary Quarterly Data Report: 2nd Quarter Release tbl.* 19 (Jul. 2012). *Id.*

Representatives Conyers, Scott and Watt wrote:

> In determining the appropriate sentence, a judge must consider **actual culpability** and the impact of a defendant's actions. It is with respect to these mere possession cases where there have been downward departures. Even with such departures, however, sentences for child pornography cases have increased an average of over 500 percent in the past 15 years. Accordingly, we believe such departures reflect rational sentencing in the face of irrational sentencing policies, not a tendency of Federal judges to be lenient on the sexual exploitation of children (*Child Protection Act of 2012*, H. Rep. 112-638, at 28). *Id.* emphasis added.

Again, Judge Gleeson was consulted and offered commentary regarding this issue, stating,

> With respect to the distinction between possessors and producers observed 'I think they are different in kind, not just in degree, and I think the bone-crushing jail terms that these mandatory minimums mandate and these guidelines advise may be properly applied or imposed upon folks in that production and sexual abuse category, but I simply don't believe they are applied appropriately to people like [the defendant], who, after listening to the facts and doing the best I can, I put in that category, that consumer category...I have a policy disagreement with the guidelines when it comes to defendants like him. *Id.*

Federal Courts have **great discretion** to decide appropriate federal sentences. Sen. Arlen Specter and Linda Dale Hoffa, *A Quiet but Growing Judicial Rebellion Against Harsh Sentences for Child Pornography Offenses – Should the Laws be Changed?*, The Champion: National Association of Criminal Defense Lawyers, October, 2011. emphasis added. Congress, however, has taken pains to limit that discretion with regard to child pornography offenses, and the deferral courts, in a series of judicial decisions across the county, are firmly rebelling. *Id.; see United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010).

Congress enacted the PROTECT Act in 2003, without consultation or input from the Sentencing Commission. This more than *doubled* the average sentences for child pornography crimes. *Id.; see United States v. Grober*, 624 D.3d 592 (3rd Cir. 2010). **As a result of this, the Sentencing Guidelines for child pornography often <u>exceed</u> those recommended for more serious crimes.** *Id.* emphasis added.

> By the time a court tallies a defendant's base level and the slew of enhancements 'that are all but inherent to the crime of conviction,' the current child pornography Guidelines almost always recommend sentences near or exceeding the statutory **maximum** sentence. *Id.; see Dorvee,* supra. emphasis added.

The fact that child pornography offenders can be given longer sentences than child abusers or violent offenders reflects a lack of care by Congress. In the rush to prove itself hostile to individuals who possess or distribute child pornography, Congress has obscured the real distinctions between different offenders. In the words of the Second Circuit, the current Guidelines were **"cobbled together," rather than drafted with purpose.** *Id.; see Dorvee,* supra., at 186. emphasis added.

Judges are using their discretionary sentencing powers to indicate their disapproval, by sentencing defendants in child pornography cases below the applicable Guidelines range at a rate much higher than for all other criminal cases (see AG Sulzberger, *Defiant Judge Takes on Child Pornography Law*, NY Times, May 24, 2010, note 9). *Id.*

The <u>lack of empirical basis</u> for the current child pornography Guidelines is a common theme among lower courts. *Id.* In response, an Iowa District Court judge stated that the increased penalties 'do not appear to be based on any sort of empirical data, and the court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses' (*US v. Johnson*, 588 F.Supp. 2d 997, 1003 (SD Iowa 2008); citing Skye Phillips, *Protect Downward Departures; Congress and Executive's Intrusion into Judicial Independence*, 12 JL & Pol'y 947, 967-84 (2004). *Id.*

**"The public lawmakers need to know how unfairly disproportionate child pornography sentences have become and how Congress' best intentions now mandate unduly severe punishments."** *Id.* emphasis added.

### D. THE FAILURE OF THE ROCKEFELLER DRUG LAWS

The Rockefeller Drug Laws were enacted in 1973 in an effort by the State of New York to be "tough on crime." The laws formed mandatory minimum terms of imprisonment with regard to drug offenses. However, in 2009, the laws were revised to remove the mandatory minimum sentence. This removal was even applied retroactively to those previously sentenced under these laws. Governor David Paterson, stated in

2009, regarding the laws, "I can't think of a criminal justice strategy that has been more unsuccessful than the Rockefeller Drug Laws."

These laws were enacted by the New York State Legislature, and revised by removing the mandatory minimum sentences also by the New York State Legislature. The legislators who initially championed the mandatory minimum sentences, were the ones who pressed for their repeal. It is clear that the Legislature recognized its failed effort, and took action to remedy their unsuccessful idea. Mandatory minimums do not work!

As in the Rockefeller Laws, herein the mandatory minimums serve no legitimate purpose and effectively over-sentence individuals. Federal Judges have the power and authority to take back the power and authority seized from them by Congress. While some judges have begun to do so, the movement has been too slow. Federal Judges, like the New York Legislature, need to recognize the errors of these statutes and disregard them entirely.

### E. CIVIL LITIGATION

In addition to the staggering, potentially un-payable fines Danny Borgos may incur as a result of these proceedings, the law firm of Cusack, Gilfillan & O'Day, LLC, has filed for restitution against him. They have filed a claim seeking restitution against Danny in the amount of $1,285,378.98. There are several problems with counsel's papers which this Court must not overlook.

The Court must not give greater weight to counsel's papers because of the type of "victim" they portray, and must not be swayed by the victim impact statements provided. In fact, Danny is as much a victim as those who are viewed in child

pornography, if not more. He too is continuing to be victimized, however his victimization is at the hands of the federal government. Rather than getting the help he so desperately needs, the government seeks to punish him.

Like the victim "Cindy," his childhood was wrought with abuse. He too lives with the knowledge of his abuse on a daily basis. Like this victim, Danny tried to commit suicide, has had trouble in school, has been placed on several medications, and has seen various therapists. Danny and "Cindy" are <u>both</u> victims.

The true criminal from whom "Cindy" should seek restitution (if any) is from the producer him/herself. Danny never harmed anyone, including "Cindy." Unfortunately, "Cindy" is able to file civil suits against those who never directly harmed her, while Danny is forced to defend against an unreasonably high sentence, even though they both suffer from potentially treatable mental health issues, both stemming from difficult childhoods caused by those who sexually abused them. Why should one victim be entitled to proper treatment and restitution, while the other is punished? If Danny is incarcerated, then he will not receive the proper treatment he requires, while "Cindy," who also suffered from sexual abuse, will be. This disparity cannot go unrecognized, and must be reconciled.

The law firm of Carol L. Hepburn, P.S., on behalf of "Vicky" filed for restitution from Danny as well. With regard to Vicky's specific harms, their papers state that it might be assumed that her psychological problem stem from the original physical abuse inflicted upon her. Their papers also state that the distribution of her images re-inflicts the harm and make it impossible for her to close the door on the incident of which she was a victim.

Vicky further states that she suffered from panic attacks, insomnia, and dissociative episodes. Danny has suffered from these symptoms as well. Also, Vicky "enveloped herself with the support of family." Unfortunately, Danny does not have the same support. Vicky's doctor, Dr. Green, recommended continued outpatient therapeutic processes, similar to the recommendations made for Danny.

Neither this office, nor Danny, disregards the fact that these two girls were victimized. However, that does not make Danny any less of a victim. He too is in need of constant therapy and rehabilitation due to his horrid past. He deserves a chance to overcome his psychological issues, not be punished for them.

## V. **CONCLUSION**

For the reasons set forth above, we respectfully request that the Court place Danny on probation, with terms necessary to continue his rehabilitation, or in the alternative, Danny Borgos be sentenced to no more than the statutory mandatory minimum term of imprisonment of five years.

Danny Borgos is only twenty four years old. He faces a time of imprisonment that people who have murdered, raped, or robbed, do not even see! The difference here is that Danny never directly harmed anyone. However the violent criminals are sentenced, potentially, to less time than young Danny. In fact, in a recent article in the New York Post, an Algerian *terrorist* who plotted to blow up no fewer than ten (10) city synagogues and some churches was sentenced to ten (10) years imprisonment. Laura Italiano, *Plotter: No more Mr. Bad Guy*, NY Post, March 16, 2013 at 12. The recommendation for Danny Borgos, under the guidelines and according to probation, is

to *serve more time imprisonment than this terrorist!* Clearly there is a major flaw in the justice system to allow for such a vast discrepancy.

Danny is troubled due to a difficult past where he was sexually abused for a period of almost eight years. It was society and his lack of support that drove him to commit the acts herein. He never received the proper treatment nor had the proper guidance.

For the past two years, Danny has strictly complied with every one of the Court's directives. He is in dire need of continued therapy, not punishment by imprisonment. This Court has the power to allow Danny to have a chance at normalcy. Imprisonment for such an extensive term would harm anyone, and will be even worse for Danny, since even his doctors have recognized he will be targeted and preyed upon once incarcerated.

The mandatory minimum terms of imprisonment are draconian. Judges, such as Judge Gleeson, Judge Weinstein, and Judge Briccetti have recognized this and begun to do something about it by speaking out against Congress's usurpation of the judiciary's power. Congress has disregarded the Sentencing Commission's recommendations and unilaterally imposed sentences that will not help the ones sentenced according to them. This is especially true for Danny. He is not a danger to society nor is he in need of punishment in the form of incarceration and the mistreatment he will almost undoubtedly receive therein. He is a perfect candidate for extensive therapy and probation.

Judge Lagueux, as stated above, *apologized* for imposing such a harsh sentence as mandated by Congress. The branches of government exist with a system of checks

and balances, otherwise the system falters. Therefore, it is time for the Federal Courts, through the District Judges, who are more familiar with the functioning of the criminal justice system, to impose sentences as they see fit, as they have always been permitted to do.

Therefore, for the reasons set forth herein, the undersigned requests this Court to issue a variance from the guidelines sentence. We ask this Court to fashion a sentence which will allow Danny Borgos to continue with his therapeutic treatment so he can cope with his past victimization, rather than imprison him and force him to endure even further victimization. To do otherwise would deter Danny Borgos's rehabilitative efforts, and fail the goals of our society.

**Respectfully yours,**

**LAW OFFICES OF DAVID I. GOLDSTEIN**

BY: _____
DAVID I. GOLDSTEIN

DIG/bmg
Encl.

cc: Rebecca Mermelstein, AUSA
**Via Email: rebecca.mermelstein@usdoj.gov**

18

DAVID I. GOLDSTEIN

## **ADDENDUM TO SENTENCING MEMORANDUM**

As this office was preparing to file the attached Sentencing Memorandum today, July 3, 2013, we received a Revised Presentence Investigation report along with the report of Dr. Must.

The recommendation with regard to sentencing was as follows (page 26):

> We respectfully recommend that Your Honor impose a sentence of 60 months' imprisonment to be followed by five years' supervised release on Counts 1 and 2, with all terms to run concurrently.

All supporting reports used in the Probation report as well as before Your Honor, have substantiated the abuse Danny has endured and the treatment he now requires. Further, the report indicates various conditions for supervised release. This shows the Probation Department's ability to impose said conditions and monitor Danny, which can run for an amount of time determined by Your Honor.

**Query: If the statutory minimum mandatory term of imprisonment was not in place, would Probation have recommended even *less* time?**

Probation now recommends sixty (60) months imprisonment, obviously to comport with the mandatory minimum term of imprisonment. However, had their hands not been tied, perhaps they would have recommended even less time for Danny.

As stated in these papers, Danny is in need of treatment, not punishment. The Probation Department has recognized this, and drastically modified their recommendation, although still restricted by the mandatory minimum.

Therefore, we respectfully request Danny be sentenced to a term of Probation with conditions to be determined by this Court.

**Respectfully yours,**

**LAW OFFICES OF DAVID I. GOLDSTEIN**

BY: _____
DAVID I. GOLDSTEIN